UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GILBERT WASHINGTON,

       Plaintiff,

v.                                    Case No.   8:08-cv-2023-T-33MAP

SCHOOL  BOARD  OF  HILLSBOROUGH
COUNTY,

       Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant's
Motion for Summary Judgment (Doc. # 75), which was filed on
April 30, 2010.   Pro se Plaintiff filed a Response in
Opposition to the Motion for Summary Judgment on May 14, 2010
(Doc. # 83).   Also before the Court is Defendant's Motion
for Sanctions against Plaintiff for Failure to Attend Court
Ordered Mediation (Doc. # 58), which was filed on March 15,
2010.

Plaintiff filed a Motion to Strike Defendant's Motion for
Sanctions on March 31, 2010. (Doc. # 66).   On June 23, 2010,
Plaintiff also filed a "Demand for Judgment" (Doc. # 92), to
which Defendant responded (Doc. # 95) on July 12, 2010.

After due consideration, the Court grants Defendant's
Motion for Summary Judgment, denies Defendant's Sanctions
Motion and also denies both motions filed by Plaintiff.

I.   **Factual Background**

Plaintiff, a 51-year old African American male, was hired by Defendant as a day-to-day substitute teacher. (Plf. Dep. Doc. # 76 at 5, 25).  In this day-to-day substitute position, Plaintiff did not have an employment contract. (Id. at 54). While Plaintiff was working as a day-to-day substitute teacher, certain school principals and other school personnel voiced complaints about Plaintiff to administration.  Several of these complaints were documented in interoffice memoranda. For instance, Beny Peretez, Principal of Wimauma Elementary, issued a memorandum which states in pertinent part:

> Mr. Washington was not able to maintain control of the classes that came to him for P.E.  We had more fights and injuries during the time he substituted than ever before in a physical education class. Because of these problems, on October 28, 1991, my secretary contacted Mrs. Myrna Brower in sub-cental and requested that Mr. Washington not be sent on sub assignments to Wimauma Elementary in the future.

(Doc. # 76-2).

In addition, Karl Schofer, Principal of Lomax Elementary, noted in a memorandum that "Mr. Gilbert Washington substituted at Lomax Elementary in a sixth grade class on February 3, 1992. . . . [He] became hostile and verbally abusive using excessive volume and angry tone." (Doc. # 76-3).  Principal Schofer further indicated, "Mr. Washington was intimidating

2

and demeaning to the students.  He kicked desks, hit desk tops with his fist, and stated that he would report all of the children for being disrespectful.  The children were frightened of him." (Id.)

Furthermore, Lillian Strauss, Principal of Palm River Elementary, commented that Mr. Washington subbed at her school on February 24, 1993, and that his performance was "unsatisfactory" for a number of reasons, including failure to follow the lesson plans, failure to follow the teacher's classroom management system, offering the students U.S. currency for responses to academic and non-academic questions, informing the students that "he was an agent for the U.S. government" and calling the students "slow-learners." (Doc. # 76-4).  Principal Strauss further noted in her memorandum: "We work hard here at Palm River to promote a safe, secure environment for our students and to protect and develop their self-esteem at all times.  Mr. Washington's behaviors were not in the best interests of our students or school." (Id.)

Other memoranda from school personnel documented Mr. Washington using profanity and exhibiting a hostile attitude. (Doc. ## 76-5 and 76-6).  Particularly, Hazel Hargrove, administrative secretary, described an August 18, 1993, incident in which Mr. Washington was "swearing" and "blowing

3

and huffing, like he was ready to explode." (Doc. # 76-5).

Eventually, on January 31, 1994, the Hillsborough County Public Schools issued Plaintiff a formal letter, signed by David G. Binnie, Assistant Superintendent, indicating, "you are not presently eligible for employment in any job with the school system" due to the "extreme nature of your behavior." (Doc. # 76-7).  In the letter, Dr. Binnie explained, "if you desire future employment with the school system, your eligibility will be considered if you can provide satisfactory references relative to your conduct and behavior in the work place during the next twelve months." (Id.)[1]

According to Linda Kipley, the General Manager of the Office of Professional Standards for the School Board of Hillsborough County, Dr. Binnie's formal letter was placed in Plaintiff's personnel file, and Plaintiff's name was placed on an "alert list" of people who are ineligible for employment. (Kipley Aff. Doc. # 79 at ¶¶ 2-3).  Thereafter, the School District implemented a new software program which inadvertently caused Mr. Washington's name, and the names of approximately 100 other individuals, to be removed from the

---

[1]  Plaintiff did not provide the references required by Dr. Binnie's formal letter for re-application. (Plf. Dep. Doc. # 76 at 68-69).

4

alert list. (Kipley Aff. Doc. # 79 at ¶ 4).

In late 2005, Plaintiff reapplied for employment with the School District, even though he never submitted the list of work references, as required by Dr. Binnie's formal letter. (Plf. Dep. Doc. # 76 at 68-69). Because the new software program deleted Plaintiff's name from the alert list, Plaintiff was "mistakenly rehired as a day-to-day substitute teacher in or around August 2005." (Kipley Aff. Doc. # 79 at ¶ 5).

Thereafter, in August 2006, Principal Joann Johnson offered Plaintiff a temporary reading teaching position at Jennings Middle School. (Johnson Dep. Doc. # 74 at 14-16). The temporary position came about when a permanent reading teacher requested a leave of absence. (Id.) Plaintiff was provided with a packet of employment forms, which Plaintiff took to Defendant's Employee Processing Center. (Plf. Dep. Doc. # 76 at 78).

During Plaintiff's processing for the temporary reading teacher position, a staff member recognized Plaintiff's name from the alert list and notified Ms. Kipley. (Kipley Aff. Doc. # 79 at ¶ 6). Ms. Kipley thereafter informed Mr. Washington that he could not be processed for the reading teacher position due to the 1994 letter from Dr. Binnie and

Plaintiff's failure to provide references as required by the letter. (<u>Id.</u>)  Thereafter, Ms. Kipley conferred with Daniel Valdez, the Deputy Superintendent, and he determined that, because Mr. Washington had been working for the school district as a day-to-day substitute for the past year (albeit due to the School District's software error), Plaintiff could continue to be employed as a day-to-day substitute, only. (<u>Id.</u>)  Ms. Kipley, on August 21, 2006, sent Mr. Washington a letter explaining that he could only work as a day-to-day substitute, and not a classroom teacher. (<u>Id.</u>; Ex. B to Kipley Aff.).

Mr. Washington continued to work as a day-to-day substitute teacher at Jennings Middle School until that position was eliminated. (Johnson Dep. Doc. # 74 at 15). Thereafter, Mr. Washington began to substitute teach at other schools. (Plf. Dep. Doc. # 76 at 135-36).  On July 25, 2007, Mr. Washington was assigned to substitute teach at Riverside Academy, wherein he was involved in a physical altercation with a student.  After that incident, he was placed on unpaid administrative leave and ultimately terminated due to his documented history of inappropriate behavior. (Kipley Aff. Doc. 79 at ¶ 7).

Plaintiff believes that Defendant's failure to process

6

his employment packet for the temporary reading position was in violation of state and federal laws.

## II.  <u>Procedural History</u>

On October 20, 2008, Plaintiff filed his complaint in the present case, (Doc. # 1), which he later amended.[2] Plaintiff's second amended complaint (Doc. # 19), is the operative complaint, and it contains the following allegations against Defendant: (1) race and gender discrimination in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, 42 U.S.C. § 1981, 42 U.S.C. § 183, and the Florida Civil Rights Act, Florida Statute Section 760.01; (2) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 and the Florida Civil Rights Act; (3) violation of the Equal Pay Act, 29 U.S.C. § 206(d); (4) tortious interference with his "employment contract;" and (5) violation of the Fifth and Fourteenth Amendment to the United States Constitution.[3]

---

[2] Plaintiff also filed a lawsuit against the School in case 8:08-cv-2042-T-33MAP.  There, Plaintiff alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  This Court consolidated Mr. Washington's two complaints against the School and, thereafter, dismissed the ADA allegations with prejudice. (Doc. ## 29, 32, 43).

[3] Plaintiff's complaint is not divided into counts, and thus, the Court has framed these legal theories from studying

Defendant filed its answer on June 23, 2009, and asserted several affirmative defenses, including the defense that Plaintiff failed to give Florida Statute Section 768.28(6) written pre-suit notification prior to filing the complaint. (Doc. # 25).

On October 27, 2010, this Court referred this case to Mediation and directed Defendant's counsel to coordinate the dates. (Doc. # 40). On October 30, 2009, Defendant filed a notice indicating that both parties agreed to mediate with Christopher Shulman, Esq. on March 2, 2010. (Doc. # 41). The Court entered an Order appointing Mr. Shulman on November 2, 2009. (Doc. # 42). On March 2, 2010, the mediator filed his report indicating "A mediation conference was scheduled for 1:30 p.m. on March 2, 2010, but was 'cancelled' by Plaintiff this morning by fax and telephone call. . . . Accordingly, no mediation was held. Due to Plaintiff's assertion of in forma pauperis status, the undersigned has elected not to impose the cancellation fee here this time." (Doc. # 54).[4]

Thereafter, on March 15, 2010, Defendant filed the Sanctions Motion predicated upon Plaintiff's unilateral and

the complaint.

[4] The parties ultimately mediated with Mr. Shulman on June 4, 2010, which resulted in an impasse. (Doc. # 91).

8

untimely cancellation of the Court Ordered Mediation. (Doc. # 58). Plaintiff has moved to strike the Sanctions Motion, arguing that health reasons necessitated cancellation of the Mediation conference.

On April 30, 2010, Defendant filed its Motion for Summary Judgment and on June 23, 2010, Plaintiff filed a Demand for Judgment (Doc. # 92).

III. **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if

it may affect the outcome of the suit under the governing law.
Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.
1997).   The moving party bears the initial burden of showing
the court, by reference to materials on file, that there are
no genuine issues of material fact that should be decided at
trial.  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260
(11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S.
317, 323 (1986)).   "When a moving party has discharged its
burden, the non-moving party must then 'go beyond the
pleadings,' and by its own affidavits, or by 'depositions,
answers to interrogatories, and admissions on file,' designate
specific facts showing that there is a genuine issue for
trial."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590,
593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

    If there is a conflict between the parties' allegations
or evidence, the non-moving party's evidence is presumed to be
true and all reasonable inferences must be drawn in the non-
moving party's favor.  Shotz v. City of Plantation, Fla., 344
F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder
evaluating the evidence could draw more than one inference
from the facts, and if that inference introduces a genuine
issue of material fact, the court should not grant summary
judgment.  Samples ex rel. Samples v. City of Atlanta, 846

F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel</u>

<u>Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856

(11th Cir. 1988)).   However, if the non-movant's response

consists of nothing "more than a repetition of his

conclusional allegations," summary judgment is not only

proper, but required.   <u>Morris v. Ross</u>, 663 F.2d 1032, 1034

(11th Cir. 1981).

IV. **Analysis**

    A.   **Title VII and FCRA Claims**

    Plaintiff asserts race and gender discrimination claims

against Defendant under Title VII of the Civil Rights Act of

1964 (codified at 42 U.S.C. § 2000(e), et seq.) as well as

under the Florida Civil Rights Act of 1992 (FCRA).[5]  Because

the Florida Civil Rights Act of 1992 was modeled after Title

VII, this Court analyzes these claims under the same

framework.   <u>See</u> <u>Gamboa v. Am. Airlines</u>, 170 F. App'x 610, 612

---

    [5] Similarly, 42 U.S.C. § 1981 prohibits intentional race
discrimination in the making and enforcement of public and
private contracts, including employment contracts. <u>Ferrill v.
Parker Group, Inc.</u>, 168 F.3d 468, 472 (11th Cir. 1999).
Claims against state actors, such as Defendant, for violations
of Section 1981 must be brought pursuant to 42 U.S.C. § 1983.
<u>Butts v. County of Volusia</u>, 222 F.3d 891, 892-94 (11th Cir.
2000).   "Title VII and section 1983 claims have the same
elements where the claims are based on the same set of facts."
<u>Pioux v. City of Atlanta</u>, 520 F.3d 1269, 1275 n.5 (11th Cir.
2008).

(11th Cir. 2006)(claims under Title VII and the Florida Civil Rights Act are analyzed under the same framework).

Plaintiff may employ one of three means to establish a prima facie case of employment discrimination under FCRA and Title VII: (1) direct evidence of discriminatory intent, (2) statistical analysis evidencing a pattern of discrimination, or (3) circumstantial evidence meeting the test established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Verbraecken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989). Plaintiff presents neither direct nor statistical evidence of discrimination. Thus, Plaintiff's case is limited to circumstantial evidence.

In analyzing allegations supported by circumstantial evidence under either the FCRA or Title VII, the Court follows substantively the same burden-shifting analysis established in McDonnell Douglas and its progeny. See Gamboa, 170 F. App'x at 612 (citing Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998)). Under the McDonnell Douglas framework, Plaintiff bears the initial burden of establishing a prima facie case of discrimination against Defendant. McDonnell Douglas, 411 U.S. at 802.

If Plaintiff successfully establishes a prima facie case of discrimination, a rebuttable presumption of discrimination

is created and the burden of proof then shifts to Defendant.
McDonnell Douglas, 411 U.S. at 802-03; Dickinson v. Springhill
Hosps., Inc., 187 F. App'x 937, 939 (11th Cir. 2006)(citing
EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1272 (11th Cir.
2000)).

To rebut the presumption created by Plaintiff's prima
facie case, Defendant must provide "legitimate,
nondiscriminatory reason[s]" for the employment action taken
against Plaintiff.  Texas Dep't of Cmty. Affairs v. Burdine,
450 U.S. 248, 254 (1981); Standard v. A.B.E.L. Servs., Inc.,
161 F.3d 1318, 1331 (11th Cir. 1998).  However, "[t]his is a
burden of production, not persuasion." Standard, 161 F.3d at
1331. "[Defendant] must merely produce evidence that could
allow a rational fact finder to conclude" its actions were not
motivated by discriminatory animus. Id.

If Defendant produces such evidence, the burden shifts
back again to Plaintiff.  McDonnell Douglas, 411 U.S. at 802-
03. Plaintiff then "has the opportunity to come forward with
evidence, including the previously produced evidence
establishing [his] prima facie case, sufficient to permit a
reasonable fact-finder to conclude that the reasons given by
the employer were not the real reasons for the adverse

13

employment decision." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997)(citations omitted).

In this case, the Court will not get through the above mentioned burden-shifting analysis because Plaintiff failed to establish a prima facie case of race or gender discrimination. To establish such a prima facie case on the basis of circumstantial evidence, Plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was subjected to adverse employment action; and (4) his employer treated similarly situated employees outside of his protected class (comparators) more favorably. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802.

Defendant has stipulated that Plaintiff is a member of a protected class and that Defendant took adverse action against Plaintiff.  However, Plaintiff has not and cannot show that he was qualified for the position, nor can Plaintiff show that Defendant treated comparators outside of Plaintiff's protected class more favorably.

Plaintiff was not qualified for the position because Dr. Binnie sent Plaintiff a formal letter in 1994, which stated that Plaintiff was not eligible for any form of employment with Defendant based on Plaintiff's inappropriate conduct, and that to be reconsidered for employment, Plaintiff would need

to submit professional references.   (Doc. # 76-7). Plaintiff failed to submit the references, and thus, Plaintiff was not eligible for employment at the time he applied for the reading position with Defendant.

In addition, Plaintiff has not demonstrated that Defendant treated comparators more favorably.   The "comparators" that Plaintiff has identified are not true comparators because they were not accused of the same type of conduct that Plaintiff was accused of.

The Court finds that Plaintiff has not established a prima facie case of discrimination. However, even assuming, arguendo, that Plaintiff had established a prima facie case of discrimination, Defendant still prevails in this case because it has provided a legitimate, non-retaliatory reason for failing to process Plaintiff's employment application for the reading teacher position, and Plaintiff has not shown that the reason is pretextual.[6]

---

[6] If a plaintiff successfully establishes a prima facie case, the employer must proffer a legitimate, non-retaliatory reason for the adverse employment action it took.   Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998).   The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason the employer provides is a mere pretext for the prohibited, retaliatory conduct. Id.

As outlined in detail above, Defendant took adverse employment action against Plaintiff (failing to process Plaintiff's reading teacher application and, thereafter terminating Plaintiff) because Plaintiff was ineligible for employment due to his failure to provide references pursuant to the letter from Dr. Binnie.  In addition, Plaintiff had a long history of well documented inappropriate behavior, and he was involved in a physical altercation with a student.

Plaintiff appears to argue that he was not at fault for the altercation with the student and that the student injured him.  However, the Court need not consider this argument.  It is not disputed that the School Board believed that Plaintiff was wrongfully involved in a physical altercation with a student.

A termination based on a good faith belief of misconduct is legitimate, even if it is later determined that no misconduct occurred.  EEOC v. Total Sys. Serv., 221 F.3d 1171, 1176-77 (11th Cir. 2000)("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.") Under this tenant, even if Plaintiff was somehow justified in becoming physically involved in an altercation with his student, Plaintiff's termination predicated on such

16

altercation would not be actionable because Defendant was operating under the belief that such altercation was, in fact, unjustified.  Further, as stated by the court in <u>Alexander v. Fulton Cty., Ga.</u>, 207 F.3d 1303, 1341 (11th Cir. 2000), "it is not the court's role to second-guess the wisdom of an employer's decision."

Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims that Defendant discriminated against Plaintiff on the basis of Plaintiff's race and gender.

**B.   <u>Age Discrimination</u>**

Plaintiff contends that Defendant discriminated against him on the basis of his age (he asserts he was 47 at the time he was hired by Defendant).  (Doc. # 19 at ¶ 6).  To establish a prima facie case of age discrimination under the ADEA on the basis of circumstantial evidence, Plaintiff must show: (1) that was a member of the protected group of persons over 40 years old; (2) that he was subject to adverse employment action; and (3) that he was qualified to perform the job for which he was rejected. <u>Duffy v. Lowe's Home Ctrs., Inc.</u>, 414 F. Supp. 2d 1133, 1142 (M.D. Fla. 2006).[7]

---

[7] In <u>O'Connor v. Consol. Coin Caterers Corp.</u>, 517 U.S. 308, 312 (1996), the Court held that allegations that the employer replaced the plaintiff with a worker under the age of 40 is not a proper element of an ADEA prima facie case:

Defendant does not dispute that Plaintiff is over 40 years old and that Plaintiff was subject to adverse employment action.   However, Defendant disputes that Plaintiff was qualified for the reading teacher position.

This Court finds that Plaintiff has not asserted a prima facie case of age discrimination under the ADEA because, as this Court found above in great detail, Plaintiff was not qualified to perform the job for which he was rejected-the reading teacher position at Jennings Middle School.

In addition, it appears to be undisputed that Plaintiff was not replaced by someone who was younger than him.   As argued by Defendant, "Plaintiff has not shown that a substantially younger individual received the position at Jennings Middle School.   In fact, *nobody* received the position because it was eliminated shortly thereafter." (Doc. # 75 at 15).

Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADEA claim.

---

"Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the <u>McDonell Douglas</u> prima facie case." <u>Id.</u>  However, the Court recognized that "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." <u>Id.</u> at 313.

C.   **Equal Pay Claim**

Plaintiff asserts that Defendant violated the Equal Pay Act, 29 U.S.C. § 206(d) (the "EPA").  To establish a violation of the EPA, Plaintiff must demonstrate that Defendant "pays different wages to employees of opposite sexes 'for equal work on jobs that performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Meeks v. Computer Assocs, Int'l, 15 F.3d 1013, 1018 (11th Cir. 1994)(quoting 29 U.S.C. 206(d)(1)).

Plaintiff has neither alleged nor demonstrated that he was paid less than any female employee performing equal work under similar working conditions.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's EPA claim.

D.   **Tortious Interference**

Plaintiff claims that Defendant tortiously interfered with his "contract" to become a reading teacher at Jennings Middle School.  To establish tortious interference with a contractual relationship, a plaintiff must establish (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the breach of the contract; (4) the absence of any justification or privilege; and (5) damages resulting from the breach.

19

Johnson Enters., of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1321 (11th Cir. 1998). Defendant is entitled to summary judgment on this claim for myriad reasons.

First, the Court finds that there is no contract in this case. To prove the existence of a contract, Plaintiff must come forward with evidence of an offer, an acceptance, consideration, and specific contractual terms. W.R. Townsend Contracting, Inc. v. Jensen Civil Contr., Inc., 728 So.2d 297, 302 (Fla. 1st DCA 1999). Concerning employment contracts, such as the one alleged to exist in the present case, the contract must specify the intended duration of the employment and the conditions of employment in definite and certain terms. Muller v. Stromberg Carlson Corp., 427 So.2d 266, 268 (Fla. 2nd DCA 1983).

Here, Plaintiff was handed an employment package to complete at Defendant's Employee Processing Center. Before Plaintiff was able to fill out the employment paperwork, Defendant determined that Plaintiff was not eligible for the position. These facts fall short of creating an enforceable contract. As stated by Ms. Kipley, "Generally, an applicant for a temporary or permanent teaching position is given an employment packet of forms to complete and take to the Employee Processing Center. This packet of forms does not

20

constitute a contract between the applicant and The School Board of Hillsborough County, Florida." (Doc. # 79 at ¶ 8). Further, "mere expectations are insufficient to create a binding term of employment." <u>Muller</u>, 427 So.2d at 268.

The Court's determination that there was no contract between Plaintiff and Defendant is further supported by Florida Statute Section 1012.22(1)(d), which grants the district school board the authority to enter into contracts of employment with instructional staff. <u>See also</u> <u>McCalister v. Sch. Bd. of Bay County</u>, 971 So.2d 1020, 1027 (Fla. 1st DCA 2008)("while the superintendent is endowed with the authority to nominate an employee for a certain position, . . . it is the school board that retains the contracting authority for the school districts").

Another reason why Plaintiff's tortious interference claim fails is that it has been asserted against the wrong party. As explained in <u>Cox v. CSX Intermodal, Inc.</u>, 732 So.2d 1092, 1099 (Fla. 1st DCA 1999), "Generally, a tortious interference claim exists only against persons who are not parties to the contractual relationship."  The School Board and its representatives and employees are considered "parties" to the contract. <u>Id.</u>  Thus, as a matter of law, Plaintiff's tortious interference claim must fail.

There is yet an equally compelling reason to grant summary judgment in Defendant's favor as to the tortious interference claim, that is, because Plaintiff failed to notify the Florida Department of Financial Services of his tortious interference claim against Defendant as mandated by Florida Statute Section 768.28(6).[8]  Plaintiff's complaint does not allege presuit notice, and Defendant filed the affidavit of Marc Stemle, the Risk Management Program Administrator for the Department of Financial Services, Division of Risk Management, Bureau of State Liability Claims, State of Florida. (Doc. # 80).

---

[8] Section 768.28(6)(a), Florida Statutes, provides that "[a]n action may not be instituted against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency and also . . . presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues . . . ." Fla. Stat. § 768.28(6)(a). A complaint must allege compliance with this requirement, Menendez v. N. Broward Hosp. Dist., 537 So.2d 89, 91 (Fla. 1988), but the allegation need only be general, Glace v. Lower Fla. Keys Hosp. Dist., 481 So.2d 509, 509 (Fla. 1985).  A complaint that fails to include such an allegation is subject to dismissal for failure to state a claim.  Menendez, 537 So.2d at 91.  A complaint is subject to dismissal with prejudice if the three-year period has run and the plaintiff has not provided the required pre-suit notice. Levine v. Dade County Sch. Bd., 442 So.2d 210, 213 (Fla. 1983) ("Where the time for [the required] notice has expired so that it is apparent that the plaintiff cannot fulfill the requirement, the trial court has no alternative but to dismiss the complaint with prejudice.").

Mr. Stemle confirms that "The Department of Financial Services, Division of Risk Management has not, to this date, received written pre-suit notice of a claim by Gilbert Washington against the School Board of Hillsborough County as required by Fla. Stat. § 768.28(6)(2007), under loss dates between August 2006 and September 2007." (Stemle Aff. Doc. # 80 at ¶ 4).

Thus, for the reasons outlined above, the Court grants summary judgment in Defendant's favor on Plaintiff's ill-fated tortious interference claim.

### E.   **Plaintiff's Constitutional Claims**

Plaintiff claims that Defendant violated the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution when Defendant failed to process his application for employment as a temporary reading teacher.

The Fifth Amendment is not implicated in this case because the Fifth Amendment only applies to the actions of the federal government. Riley v. Camp, 130 F.3d 958, 972 (11th Cir. 1997). Thus, the Court's analysis will focus on Plaintiff's allegations under the Fourteenth Amendment.

In order to establish a violation of the Fourteenth Amendment's due process clause, Plaintiff must show a deprivation of a constitutionally protected liberty or

property interest and a constitutionally inadequate process. Foxy Lady, Inc. v. City of Atlanta, 347 F.3d 1232, 1236 (11th Cir. 2003). The statute of limitations in Florida for a violation of the Fourteenth Amendment is four years. Salomon v. City of Jacksonville, 3:05-cv-673-J-32HTS, 2007 U.S. Dist. LEXIS 74208 (M.D. Fla. Oct. 4, 2007).

The Court finds that Defendant did not violate the Fourteenth Amendment in any of its employment actions against Plaintiff because, as an untenured day-to-day substitute teacher, Plaintiff had no property interest in continued employment. See Sullivan v. Sch. Bd. of Pinellas County, 773 F.2d 1182, 1185 (11th Cir. 1985).

Further, any contention that Plaintiff may have regarding the 1994 letter requiring references prior to re-application is time-barred. Thus, Plaintiff is not entitled to any relief under the United States Constitution.

**F.    Other Claims**

The Court notes that in Plaintiff's response in opposition to Defendant's Motion for Summary Judgment, Plaintiff attempts to interject new causes of action against Defendant. Specifically, Plaintiff indicates, "Plaintiff's claims before this Court are claims of race discrimination and retaliation, ADEA, tortious interference, violation of the

24

Florida Whistleblower's Act, and worker's compensation retaliation." (Doc. # 83 at 1). The Court notes that Plaintiff's operative complaint makes absolutely no mention of retaliation (either under Title VII or with respect to worker's compensation) or the Florida Whistleblower's Act.

The Eleventh Circuit has held that new claims cannot be raised in response to summary judgment. Al-Amin v. Donald, 165 F. App'x 733, 740 (11th Cir. 2006)(indicating that a plaintiff cannot amend the complaint through argument in a brief opposing summary judgment).

Thus, the Court will not entertain the above-mentioned claims.

### G. **Discovery**

In Plaintiff's response to Defendant's Motion for Summary Judgment, Plaintiff claims that "The Plaintiff had submitting [sic] pleadings, motions before the Court to indicated [sic] several discovery abuse [sic] committed by Defendant. Plaintiff [sic] ability to put on his case and make factual inquiry, because their improper interference. Therefore, Defendant is not entitled to summary judgment by prohibiting Plaintiff from discovering material facts relevant to his case." (Doc. # 83 at 11).

It appears to the Court that Plaintiff is attempting to assert a Rule 56(f), Fed.R.Civ.P., argument.  That Rule states in pertinent part:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1)  deny the motion;
> (2)  order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> (3)  issue any other just order.

The Eleventh Circuit has considered the purpose and application of Rule 56(f), Fed.R.Civ.P., on a number of occasions.  In <u>Reflectone, Inc. v. Ferrand Optical Co., Inc.</u>, 862 F.2d 841 (11th Cir. 1989), the court explained:

> Rule 56(f) specifically addresses the question of summary judgment before discovery has taken place.  The party opposing summary judgment may move the court to permit the discovery necessary to oppose the motion.  The party seeking to use rule 56(f) may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but rather he must specifically demonstrate how the postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.

<u>Reflectone, Inc.</u>, 862 F.2d at 843.  Furthermore, in <u>Harbert International v. James</u>, 157 F.3d 1271 (11th Cir. 1998), the court expounded upon the requirements for relief under Rule 56(f), Fed.R.Civ.P., as follows:

26

> A Rule 56(f) motion must be supported by an affidavit which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment. Whether to grant or deny a Rule 56(f) motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party.

Harbert, 157 F.3d at 1280 (internal citations omitted).

In the present case, Plaintiff's vague and unsupported allegation that Defendant has somehow been involved in a discovery abuse does not carry the day, especially in light of the absence of a supporting affidavit by Plaintiff. At this time, there are no pending discovery motions before the Court, and the record shows that Plaintiff's discovery issues were addressed by the Magistrate Judge. (Doc. ## 34, 35, 36, 37).

In addition, it appears that it was Plaintiff, rather than Defendant, who continuously violated the discovery rules in this case. For instance, on March 12, 2010, the Magistrate Judge granted Defendant's motion for a protective order and motion to quash subpoena duces tecum (Doc. # 56) because Plaintiff failed to give 14 days' notice under Local Rule 3.02, M.D. Fla. and because "Plaintiff is attempting to use a subpoena duces tecum to circumvent Fed.R.Civ.P. 34 and the discovery deadline, Plaintiff failed to properly serve the subpoena on Defendant's employee, Plaintiff failed to obtain

the signature of either the clerk of court or an attorney on the subpoena, Plaintiff failed to include the text of Fed.R.Civ.P. 45(c) and (d) in the subpoena, and Plaintiff failed to identify the method for recording the deponent's testimony." (Doc. # 57 at 1-2).

The Court determines that Plaintiff's discovery related contentions do not bar this Court from granting summary judgment to Defendant on all of Plaintiff's claims.

**V.   Plaintiff's Demand for Judgment**

On June 23, 2010, Plaintiff filed a Demand for Judgment (Doc. # 92), which the Court strikes for a number of reasons. First, to the extent that the Demand is construed as a Motion for Summary Judgment, Plaintiff's Demand is untimely filed in violation of the Court's April 30, 2010, deadline for filing dispositive motions as set forth in the Case Management and Scheduling Order.

Second, it is due to be stricken because it is in violation in Local Rule 3.01(a), M.D. Fla. Specifically, Plaintiff's Demand for Judgment does not contain a statement of the basis for the request for relief or a memorandum of legal authority in support of such request.

Third, Plaintiff filed a similar motion labeled "Petition or Motion for Declaratory Judgment" on January 16, 2009, which this Court denied on May 5, 2009. (Doc. ## 9, 11, 21).

Furthermore, this Court has determined that it is appropriate to grant Defendant's Motion for Summary Judgment on all of Plaintiff's complaint counts, and thus, Plaintiff's Demand for Judgment is also due to be denied on the merits.

## VI.   Defendant's Sanctions Motion

Defendant requests an order sanctioning Plaintiff for Plaintiff's actions of cancelling the mediation conference in this case.   It appears that the mediator would have been justified in imposing a $900 cancellation fee due to Plaintiff's cancellation of the March 2, 2010, mediation, but, graciously, did not impose such a fee.

The Court determines that, had the mediator imposed the cancellation fee, the Court would have required Plaintiff to pay such fee in full.   However, since no fee was imposed, the Court will deny the Sanctions Motion.[9]

---

[9] The Court determines that it is appropriate to deny Plaintiff's Motion to Strike the Sanctions Motion. Although the Court has denied the Sanctions Motion, such Motion is not subject to being stricken, as erroneously argued by Plaintiff.

## VII. <u>Conclusion</u>

This Court grants summary judgment in favor of Defendant because Plaintiff has failed to establish a prima facie case under any of the state and federal laws he claims Defendant violated.   In addition, Defendant has come forward with several proffered legitimate and non-discriminatory reasons for refusing to process Plaintiff's employment paperwork and ultimately terminating Plaintiff, and Plaintiff has failed to come forward with evidence to refute Defendant's proffered legitimate and non-discriminatory business decisions.

In addition, the Court strikes Plaintiff's Demand for Judgment and denies Defendant's Sanctions Motion.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant's Motion for Summary Judgment (Doc. # 75) is **GRANTED**.

(2) Defendant's Motion for Sanctions against Plaintiff for Failure to Attend Court Ordered Mediation (Doc. # 58) is **DENIED**.

(3) Plaintiff's Motion to Strike Defendant's Motion for Sanctions (Doc. # 66) is **DENIED**.

(4) Plaintiff's "Demand for Judgment" (Doc. # 92) is

**STRICKEN.**

(5) The Clerk is directed to enter Judgment in Defendant's

favor and, thereafter, to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>3rd</u>

day of August 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record